UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

ALEJANDRO ESPINOZA,                                         CASE NO.

    Plaintiff,

vs.

BUNNY RETAIL LIMITED PARTNERSHIP,
DBA Psycho Bunny
a Florida limited partnership,

    Defendant,
_____/

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND JURY TRIAL DEMAND

Plaintiff, ALEJANDRO ESPINOZA, through undersigned counsel, sues Defendant, Bunny Retail Limited Partnership, DBA Psycho Bunny, a Florida limited partnership (hereinafter referred to as "Psycho Bunny"), for declaratory and injunctive relief, and damages, and alleges as follows:

1) This action is brought under Title III of the Americans With Disabilities Act ("ADA"), that is codified in 42 U.S.C. §§12181-12189.

2) This action is also brought pursuant to 28 C.F.R. Part 36.

3) This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the ADA.

4) Furthermore, because this Court has jurisdiction over the ADA claim, the Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

5) Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

6) Defendant, Psycho Bunny is a Florida limited partnership authorized to do business and doing business in the State of Florida.

7) Defendant, Psycho Bunny owns and operates retail stores that sell clothing for men and boys, accessories, and gift cards. There is a retail location in Miami-Dade County.

8) Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

9) Plaintiff desires to prevent discrimination and demands equal access to Defendant's internet website to purchase shorts, a sweatshirt, and a tie.

10) Plaintiff also seeks declaratory and injunctive relief for trespass against the Plaintiff's computer.  The computer is Plaintiff's personal property, and a claim for trespass attached to same.

11) The Defendant is also liable for compensatory damages to Plaintiff as a result of the trespass to Plaintiff's personal property.

12) The remedies provided under common law for trespass are not exclusive, and same may be sought in connection with suits brought under the ADA.

13) Venue is proper in the Southern District of Florida, Miami-Dade Division, since all events, actions, injuries, and damages complained of herein occurred in the Southern District of Florida.

14) Furthermore, Plaintiff is a resident of Miami-Dade County which falls within the Miami Division of the Southern District of Florida.

15) At all relevant, times Plaintiff is and was visually impaired and has suffered from Leber Congenital Amaurosis since birth, which is a condition that substantially impairs Plaintiff's vision.

16) Plaintiff's visual impairment interferes with his day-to-day activities and causes limitations in visualizing his environment.  As such, Plaintiff is a member of a protected class under the

ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, et seq., and in 42 U.S.C. 3602, §802(h).

17) Plaintiff regularly uses the computer, but he needs the assistance of special software for visually impaired persons. The software that he uses is screen reader software that is readily available commercially.

18) Defendant is a private entity which owns and operates retail locations. The stores are open to the public, and each of Defendant's locations is defined as a "public accommodation" within the meaning of Title III of the ADA because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

19) Defendant's website is a place of public accommodation per 42 U.S.C. Section 12181(7)(E) because it's an extension of Defendant's brick and mortar stores. The public is able to locate the Defendant's retail stores and allows consumers to purchase men's and boys' clothing, accessories, gift cards, create an electronic account to place and track orders, join Defendant's email list to receive special offers, start an online chat with one of Defendant's sales representatives, and subscribe to Defendant's newsletter.

20) Since the Defendant's website is a public accommodation, it must comply with the requirements of the ADA. The website cannot discriminate against individuals with disabilities.

21) Plaintiff is a customer of Defendant who is and was interested in purchasing shorts, a sweatshirt, and a tie through Defendant's website and at Defendant's stores and visiting Defendant's brick and mortar locations.

22) Plaintiff is not able to visit the physical locations without the assistance of a family member or caretaker, so the ability to purchase merchandise on Defendant's website for delivery to his home is important to him as an alternative when he is not able to visit the Defendant's stores.

23) The Website also services Defendant's physical stores by providing information on its brands of merchandise, editorials, sales campaigns, promotions, and other information that Defendant is interested in communicating to its customers about its physical locations.

24) Since the website allows the public the ability to locate Defendant's physical stores and retail locations, sells merchandise offered for sale by Defendant from its physical stores, the website is an extension of, and gateway to, Defendant's physical stores.  By this nexus, the website is characterized as an intangible service, privilege and advantage provided by a place of public accommodation as defined under the ADA, and thus an extension of the services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

25) Because the public can view and purchase Defendant's merchandise that is also offered for sale by Defendant at its physical stores, the Website is an extension of and gateway to the physical stores, which are places of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).  As such, the Website, as an intangible service, privilege and advantage of Defendant's brick and mortar locations, must be fully accessible and in compliance with the ADA, must not discriminate against individuals with disabilities, and must not deny full and equal enjoyment of the same services, privileges and advantages afforded to the general public both online and at the physical locations.

26) At all times material hereto, Defendant was and still is an organization owning and operating the website at https://psychobunny.com.  Since the Website is open through the internet to the public as an extension of the retail stores, by this nexus the Website is an intangible service,

privilege and advantage of Defendant's brick and mortar locations, and Defendant has subjected itself and the associated Website it created and maintains to the requirements of the ADA.

27) Plaintiff is and/or has been a customer who is interested in patronizing, and intends to patronize, Defendant's physical stores, and purchase Defendant's merchandise.

28) The opportunity to shop and pre-shop Defendant's merchandise is an important accommodation for Plaintiff because traveling outside of the home as a visually disabled individual is often a difficult, hazardous, frustrating, confusing, and frightening experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

29) Like most consumers, Plaintiff accesses numerous websites at a time to compare merchandise and prices, sales, discounts, and rewards programs. Plaintiff may look at several dozens of sites to compare features and prices.

30) During the months of October and November 2019, Plaintiff attempted on several occasions to utilize the Website to browse through the merchandise and on-line offers to educate himself as to the merchandise, sales, and promotions being offered, and with the intent to make a purchase through the Website or at one of Defendant's physical stores.

31) Places of public accommodation are not just brick-and-mortar structures. The United States Department of Justice and the binding case law increasingly recognize that private entities are providing goods and services to the public through websites that operate as places of public accommodation under Title III.

32) Defendant is required to make reasonable accommodations to its websites for individuals with disabilities to allow them to participate in web-based promotions and obtain goods or services via the Internet just as sighted persons are able to do.

33) Plaintiff utilized Chrome Vox ("Screen Reader Software") to attempt to purchase the merchandise on Defendant's website. However, the Plaintiff was not able to freely and fully use Defendant's website because it contains access barriers that make it inaccessible to persons with disabilities, and for which there is no reasonable accommodation for the Plaintiff.

34) A person who can see can enjoy the benefits and privileges provided by Defendant's website that include, but are not limited to locating the Defendant's retail stores, purchasing men's and boys' clothing, accessories, and gift cards, creating an electronic account to place and track orders, joining Defendant's email list to receive special offers, starting an online chat with one of Defendant's sales representatives, and subscribing to Defendant's newsletter.

35) A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's website and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

36) The Department of Justice has provided useful guidance regarding website accessibility under the ADA, and the binding and persuasive case law in this district has applied the Web Content Accessibility Guidelines ("WCAG") 2.0 or 2.1 to determine accessibility.

37) Defendant's website does in fact fail the following WCAG 2.0-AA Compliance standards and it does not provide sufficient alternatives to serve the equivalent purpose:

> Violation: Labels or instructions are not provided when content requires user input.

>> Does not indicate in an audible format that email submission to receive discount has been successfully completed. Does not indicate in an audible format that size needs to be selected. Shopping cart link not properly labeled.

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.2 Labels or Instructions (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.2 Labels or Instructions.*

Violation: When an input error is automatically detected, the item that is in error is not described to the user in text.

Does not indicate in an audible format existing error when trying to add to cart with no size selected.

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.1 Error Identification (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.1 Error Identification.*

Violation: When an input error that does not jeopardize the security or purpose of the content is automatically detected and suggestions for correction are known, these suggestions are not provided to the user.

Does not indicate in an audible format existing error when trying to add to cart with no size selected.

Applicable WCAG 2.0 Standard at Issue: *Standard 3.3.3 Error Suggestion (Level AA).*

Nature of the Violation: required by WCAG 2.0's *Standard 3.3.3 Error Suggestion.*

38) Furthermore, Defendant's website does not contain accessibility assistance that would direct a visually impaired person like the Plaintiff to someone who he can contact for assistance, questions, or concerns.

39) Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the website, in contravention of the ADA.

40) On information and belief, Defendant is, and at all times has been, aware of the barriers to its website which prevent individuals with disabilities who are visually impaired from comprehending the information within same, and is also aware of the need to provide access to all persons who visit its site.

41) Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged in this Complaint, such that this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's discriminatory practices in connection with use of its website.

42) Notice to Defendant is not required because of Defendant's failure to cure the violations.

43) Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

44) Plaintiff has retained the undersigned attorneys to represent his in this case, and has agreed to pay them a reasonable fee for their services.

## **COUNT I – VIOLATION OF THE ADA**

45) Plaintiff realleges paragraphs 1 through 44 as if set forth fully herein.

46) Defendant owns and operates the https://psychobunny.com website, and is a public accommodation subject to the ADA pursuant to 42 U.S.C. §12181(7)(E).

47) Defendant's website is inaccessible to persons with disabilities like the Plaintiff, who is visually impaired. Plaintiff was not able to enjoy full and equal access to the information and services that Defendant has made available to the public on its website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

48) Defendant's website is not in compliance with the ADA.

49) Defendant has made no reasonable accommodation for Plaintiff's disability.

50) A cursory review of a portion of the Defendant's website revealed that the website is not accessible to persons like the Plaintiff that are visually impaired as required by law and for which there is no sufficient alternative on Defendant's website, including:

Violation: A mechanism is not available to bypass blocks of content that are repeated on multiple Web pages.

No option is provided to skip navigation and access the page's content.

Applicable WCAG 2.0 Standard at Issue: *Standard 2.4.1 Bypass Blocks (Level A).*

Nature of the Violation: required by WCAG 2.0's *Standard 2.4.1 Bypass Blocks.*

51) Due to Defendant's failure to provide an ADA compliant website, the Plaintiff has been injured since he has been denied full access to Defendant's website.

52) As a result, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303 to correct the inaccessibility that leads to discrimination against visually impaired persons.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's website is in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update its website, and continue to monitor and update its website on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to clearly display the universal disabled logo within its website, wherein the logo [1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to ensure that individuals who are disabled are aware of the availability of the accessible features of the website;

D. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E. An Order directing Defendant, by a date certain to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its website;

F.  An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually disabled;

G. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's website to be fully accessible to the visually disabled;

H. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for,

or who publish final content to, Defendant's website on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

I.  An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct automated accessibility tests of its website to identify any instances where the website is no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the twelve (12) quarterly reports to Plaintiff's counsel for review.

J.  An Order directing Defendant, by a date certain, to make publicly available and directly link from its website homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of its website and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems.

K.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

Such other and further relief as the Court deems just and equitable.

---


[1]

## COUNT II – TRESPASS

53)   Plaintiff realleges paragraphs 1 through 44 as if set forth herein.

54)   Defendant's website contains software analytics. Since Plaintiff has navigated Defendant's website as stated herein, Plaintiff's computer and the personal information and browsing history stored therein, has suffered a trespass by Defendant.

55)     Plaintiff never consented to and was unaware that Defendant's website was placing software on his computer.

56)     Defendant committed common law trespass in violation of Florida law against Plaintiff because Plaintiff did not consent to the placement of tracking and information securing software on his personal computer, which was done without his knowledge and consent.

57)     Defendant's trespass has damaged Plaintiff by affecting the condition and value of his computer.

58)     On its website, Defendant has an internet privacy policy section that can only be accessed by clicking a a barely visible section at the bottom of the page called "Privacy Policy", providing that they use cookies and similar technologies to collect a consumer's information and they obtain non-public information from their users for their own advertising and marketing purposes by placing software on its website that collects a website user's preferences and internet browsing habits as follows:

*what we collect*
*We may collect the following information:*
*- Name*
*- Contact information including email address*
*- Demographic information such as postcode, preferences and interests*
*- Other information relevant to customer surveys and/or offers*
*For the exhaustive list of cookies we collect see the List of cookies we collect section.*

*what we do with the information*
*We require this information to understand your needs and provide you with a better service, and in particular for the following reasons:*
*- Internal record keeping.*
*- We may use the information to improve our products and services.*

*- We may periodically send promotional emails about new products, special offers or other information which we think you may find interesting using the email address which you have provided.*

*- From time to time, we may also use your information to contact you for market research purposes. We may contact you by email, phone, fax or mail. We may use the information to customise the website according to your interests.*

*security*
*We are committed to ensuring that your information is secure. In order to prevent unauthorised access or disclosure, we have put in place suitable physical, electronic and managerial procedures to safeguard and secure the information we collect online.*

*how we use cookies*
*A cookie is a small file which asks permission to be placed on your computer's hard drive. Once you agree, the file is added and the cookie helps analyse web traffic or lets you know when you visit a particular site. Cookies allow web applications to respond to you as an individual. The web application can tailor its operations to your needs, likes and dislikes by gathering and remembering information about your preferences.*

*We use traffic log cookies to identify which pages are being used. This helps us analyse data about web page traffic and improve our website in order to tailor it to customer needs. We only use this information for statistical analysis purposes and then the data is removed from the system.*

*Overall, cookies help us provide you with a better website, by enabling us to monitor which pages you find useful and which you do not. A cookie in no way gives us access to your computer or any information about you, other than the data you choose to share with us. You can choose to accept or decline cookies. Most web browsers automatically accept cookies, but you can usually modify your browser setting to decline cookies if you prefer. This may prevent you from taking full advantage of the website.*

*links to other websites*
*Our website may contain links to other websites of interest. However, once you have used these links to leave our site, you should note that we do not have any control over that other website. Therefore, we cannot be responsible for the protection and privacy of any information which you*

*provide whilst visiting such sites and such sites are not governed by this privacy statement. You should exercise caution and look at the privacy statement applicable to the website in question.*

*controlling your information*
*You may choose to restrict the collection or use of your personal information in the following ways:*
*- Whenever you are asked to fill in a form on the website, look for the box that you can click to indicate that you do not want the information to be used by anybody for direct marketing purposes*
*- If you have previously agreed to us using your personal information for direct marketing purposes, you may change your mind at any time by writing to or emailing us at customerservice@psychobunny.com*
*We will not sell, distribute or lease your personal information to third parties unless we have your permission or are required by law to do so. We may use your personal information to send you promotional information about third parties which we think you may find interesting if you tell us that you wish this to happen.*
*If you believe that any information we are holding on you is incorrect or incomplete, please write to or email us as soon as possible, at the above address. We will promptly correct any information found to be incorrect.*

*list of cookies we collect*
*The table below lists the cookies we collect and what information they store.*

| *COOKIE name* | *COOKIE Description* |
| --- | --- |
| *CART* | *The association with your shopping cart.* |
| *CATEGORY_INFO* | *Stores the category info on the page, that allows to display pages more quickly.* |
| *COMPARE* | *The items that you have in the Compare Products list.* |

| CURRENCY | Your preferred currency |
|---|---|
| CUSTOMER | An encrypted version of your customer id with the store. |
| CUSTOMER_AUTH | An indicator if you are currently logged into the store. |
| CUSTOMER_INFO | An encrypted version of the customer group you belong to. |
| CUSTOMER_SEGMENT_IDS | Stores the Customer Segment ID |
| EXTERNAL_NO_CACHE | A flag, which indicates whether caching is disabled or not. |
| FRONTEND | You sesssion ID on the server. |
| GUEST-VIEW | Allows guests to edit their orders. |
| LAST_CATEGORY | The last category you visited. |
| LAST_PRODUCT | The most recent product you have viewed. |
| NEWMESSAGE | Indicates whether a new message has been received. |
| NO_CACHE | Indicates whether it is allowed to use cache. |
| PERSISTENT_SHOPPING_CART | A link to information about your cart and viewing history if you have asked the site. |
| POLL | The ID of any polls you have recently voted in. |
| POLLN | Information on what polls you have voted on. |

| | |
|---|---|
| **RECENTLYCOMPARED** | *The items that you have recently compared.* |
| **STF** | *Information on products you have emailed to friends.* |
| **STORE** | *The store view or language you have selected.* |
| **USER_ALLOWED_SAVE_COOKIE** | *Indicates whether a customer allowed to use cookies.* |
| **VIEWED_PRODUCT_IDS** | *The products that you have recently viewed.* |
| **WISHLIST** | *An encrypted list of products added to your Wishlist.* |
| **WISHLIST_CNT** | *The number of items in your Wishlist.* |

59) Due to Plaintiff's disability, he could not understand Defendant's website and he could not give informed consent to Defendant's installation of data and information tracking software on his computer. Defendant also could not give informed consent to Defendant's collection of his browsing history and the placement of analytics on his computer.

60) Thus, Plaintiff has no adequate remedy at law to redress Defendant's knowing and reckless disregard for Plaintiff's right to exclude others from his computer and determine which programs should be installed and operated on his computer.

WHEREFORE, Plaintiff demands judgment against Defendant for Plaintiff's damages, interest, costs, and such further relief as the Court deems just and equitable.

## **Request for Jury Trial**

61) Plaintiff requests a jury trial.

Submitted by:

Mendez Law Offices, PLLC
Attorneys for Plaintiff
P.O. BOX 228630
Miami, Florida 33172
Telephone: 305.264.9090
Facsimile: 1-305.809.8474
Email: info@mendezlawoffices.com
By: _____/s/_____
DIEGO GERMAN MENDEZ, ESQ.
FL BAR NO.: 52748

Adams & Associates, P.A.
Attorneys for Plaintiff
6500 Cowpen Road, Suite 101
Miami Lakes, FL  33014
Telephone:  305-824-9800
Facsimile:  305-824-3868
Email:  lr1208@live.com
By: _____ /s/_____
LYDIA C. QUESADA, ESQ., of Counsel
FL BAR NO.: 191647